IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | DOCKET NO.: 3:24-CR-209-FDW |
| ) | |
| v. ) | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR SUPPRESS |
| ) | |
| DAVID DANIEL ) | |

NOW COMES the United States of America, by and through Russ Ferguson, United States Attorney for the Western District of North Carolina, and hereby requests that the Court deny David Daniel's ("Defendant") Motion to Dismiss, or in the Alternative Suppress (Doc. 25), because the investigation into Defendant was lawful and neither that investigation nor Defendant's conduct involving the sexual exploitation of children was covered by Defendant's pardon for offenses that occurred at the U.S. Capitol on January 6, 2021.

## I. INTRODUCTION

Defendant makes a number of arguments in his Motion, but they all focus around one key idea – that the Presidential Pardon, issued on January 20, 2025, should cause Defendant's indictment for child sex offenses in the Western District of North Carolina to be dismissed or evidence of those offenses legally obtained through search warrants to be suppressed. Defendant acknowledges that "the charges here are unrelated to the January 6 case," and that the pardon does not "reach" the indictment in this district. (Doc. 25 at 1). Such a concession is sufficient to dispose of Defendant's request. However, Defendant argues that because evidence was obtained based on search warrants that focused on the January 6 investigation, his case should be dismissed. Defendant also argues that allowing the child exploitation case to proceed would violate his due process rights because similarly situated defendants have had their cases dismissed. In the

1

alternative, Defendant asks that the evidence obtained in the warrants discussed below be suppressed, claiming that the pardon makes the warrants invalid and a violation of Defendant's Fourth Amendment rights.

The pardon, however, does not wipe away Defendant's unrelated conduct of possessing child pornography or sexual exploitation of a minor. The unrelated nature of that conduct is especially evident because a separate investigation was already underway. Nor is there any basis to suppress the evidence of the child-exploitation offenses that the officers saw in plain-view in the good-faith execution of a warrant. While Defendant makes this issue out to be pioneering law, the Fourth Amendment jurisprudence is clear and well-established that the evidence at issue is admissible in this case and the charges to proceed.

## II. PROCEDURAL AND FACTUAL BACKGROUND

1. In February 2021, the Mint Hill Police Department ("MHPD") opened an investigation into child sex offenses that Defendant committed involving Minor Victim 1 from 2015 to 2016.

2. In March 2023, the Forsyth County Sheriff's Office ("FCSO") opened an investigation into child sex offenses that Defendant committed involving Minor Victim 2 from 2021 to 2023. Neither the MHPD nor FCSO investigation was opened because of, or related in any way, to the events of January 6, 2021.

3. On November 27, 2023, a complaint was issued in the District of Columbia ("DDC") by U.S. Magistrate Judge Moxila A. Upadhyaya for Defendant based on violations of federal law related to events at the U.S. Capitol on January 6, 2021. (DDC Case No. 1:23-MJ-309, Doc. 1).

4. On November 28, 2023, a search warrant was issued in the Western District of North Carolina ("WDNC") by U.S. Magistrate Judge David C. Keesler to search Defendant's person and residence for evidence of the January 6 offenses, including electronic devices. (WDNC Case No. 3:23-MJ-413; hereinafter referred to as "WDNC Search Warrant related to January 6").

5. On November 30, 2023, agents executed the WDNC Search Warrant related to January 6 and arrest warrant for the DDC complaint. Agents recovered a number of electronic devices, including an ASUS laptop and an iPhone 14 Pro Max.

6. On April 24, 2024, Defendant was indicted by the Grand Jury in the DDC in an eight-count indictment charging Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1); Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. 1752(a)(2); Engaging in Physical Violence in a Restricted Building or Grounds, in violation of 18 U.S.C. 1752(a)(4); Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D), Act of Physical Violence in the Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(2)(F); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). (DDC Case No. 1:24-CR-200, Doc. 19).

7. On July 24, 2024, a search warrant was issued in WDNC by Judge Keesler to search the digital devices seized from Defendant and his residence on November 30, 2023, and the image of a phone seized from Defendant on March 10, 2021 in the MHPD child exploitation investigation for evidence related to child exploitation and firearm offenses. (WDNC Case No. 3:24-MJ-227; "WDNC Search Warrant related to child exploitation and firearms").

3

8. On September 19, 2024, a complaint was issued in WDNC by U.S. Magistrate Judge W. Carleton Metcalf charging Defendant with Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), and Sexual Exploitation of a Minor, in violation of 18 U.S.C. § 2251(a). (WDNC Case No. 3:24-MJ-302, Doc. 3). Defendant was arrested on the accompanying arrest warrant on September 20, 2024.

9. On October 15, 2024, Defendant was indicted by the Grand Jury in the WDNC in a two-count indictment alleging the offenses of Production of Child Pornography from in or about 2015 and up to and including November 19, 2016, in violation of 18 U.S.C. § 2251(a), and with Possession of Child Pornography on or about November 30, 2023, in violation of 18 U.S.C. § 2252A(a)(5)(B). (WDNC Case No. 3:24-CR-209, Doc. 14).[1]

10. On January 20, 2025, President Trump issued a proclamation Granting Pardons and Commutation of Sentences for Certain Offenses Relating to the Events at or near the United States Capitol on January 6, 2021.

11. On January 23, 2025, United States District Court Judge Trevor N. McFadden granted the Government's Motion to Dismiss the DDC indictment against Defendant. (DDC Case No. 1:24-CR-200, Doc. 43).

12. On March 26, 2025, Defendant filed the Motion to Dismiss or in the Alternative Suppress that is before the Court. (WDNC Case No. 3:24-CR-209, Doc. 25).

13. On April 15, 2025, Defendant was indicted by the Grand Jury in the WDNC in a five-count superseding indictment alleging two counts of Sexual Exploitation of a Minor from in or about 2015 and up to and including November 19, 2016, and from in or about November 2021

---

[1] This indictment and the related investigation will be collectively referred to as both the child exploitation investigation and child exploitation offenses.

4

and up to and including March 2023, in violation of 18 U.S.C. § 2251(a); two counts of Receipt of Child Pornography on or about December 7, 2021, and on or about December 9, 2021, in violation of 18 U.S.C. § 2252A(a)(2)(A); and one count of Possession of Child Pornography on or about November 30, 2023, in violation of 18 U.S.C. § 2252A(a)(5)(B). (WDNC Case No. 3:24-CR-209, Doc. 31).

### III. ARGUMENT

**A. The pardon covering January 6, 2021 offenses does not warrant a dismissal of the child exploitation case in WDNC.**

Defendant claims that the pardon issued by President Trump on January 20, 2025, regarding offenses committed at or near the U.S. Capitol on January 6, 2021, should result in a dismissal of the WDNC charges facing Defendant because evidence was obtained pursuant to a warrant related to January 6 and that pursuing this prosecution would violate due process.

In looking first to the language of the pardon, it repeats throughout that its scope extends to offenses "related to events that occurred at or near the United States Capitol on January 6, 2021." Defendant acknowledges that his child exploitation charges do not fall within the pardon's scope. He argues instead that the child exploitation indictment should be dismissed because evidence was recovered during the January 6 investigation. In order to support that position, Defendant extends the actions of a pardon to a level not supported by any definition or case law.

Examining at *Ex parte Garland*, cited and emphasized by Defendant, the Supreme Court never said that the investigation of an individual for unlawful conduct that is pardoned is subject to dismissal or suppression. *Ex parte Garland*, 71 U.S. 333 (1866). In *Garland*, the Supreme Court clarifies over, and over again that a pardon affects conviction and guilt. Albeit limited, courts have touched on issues regarding the effects of a pardon and how expansive they actually are. The District of Columbia Court of Appeals looked to this issue in *In re Abrams*, 689 A.2d 6 (D.C.

5

1997). In *Abrams*, the Court was reviewing whether pardoned conduct could be held against someone who was petitioning to have their bar license restored. *Id*. The Court held that the conduct underlying a pardon was still something that could be considered and that a presidential pardon "does not create any factual fiction" that a conviction had not occurred. *Id*. at 13 (quoting *United States v. Noonan*, 906 F.2d 952, 960 (3d Cir. 1990)); *see also, e.g.*, *Burdick v. United States*, 236 U.S. 79, 94 (1915) (explaining that acceptance of pardon implies acceptance of guilt); *In re North*, 62 F.3d 1434, 1437-1438 (D.C. Cir. 1994) (discussing limits of *Garland*).

While Defendant's convictions related to the January 6 offenses are certainly wiped away, the pardon does not affect the underlying investigation or unlawful conduct of the defendant. This is not a case in which a warrant to investigate conduct on January 6, 2021, was the sole basis by which conduct otherwise confined to the home would have been discovered. Instead, the charged offenses involved specific child victims, and two distinct investigations were already open on Defendant for his sexual exploitation of minors and evidence had been gathered supporting the federal charges Defendant faces in the WDNC. Defendant mischaracterizes the evidence in the child exploitation investigation by claiming that *all* of the evidence supporting the WDNC indictment was derived from the WDNC Search Warrant related to January 6, when in reality, both MHPD and FCSO had already taken substantial independent steps in investigating those crimes, including interviews and device extractions. Indeed, even without the WDNC Search Warrant related to January 6, there was sufficient probable cause to search for, seize, and review the contents of Defendant's electronic devices for evidence of child exploitation crimes based on the pre-existing evidence from the MHPD and FCSO investigations. Defendant's child-exploitation offenses are thus not "related to" the conduct on January 6, 2021, for which he was pardoned.

6

## B. The Department of Justice has discretion to determine whom to prosecute.

Defendant argues that because other cases stemming from January 6 investigations involving other defendants were dismissed, the same should apply to Defendant. In many of the cases cited by Defendant, the Government moved to dismiss the case pursuant to Fed. R. Crim. P. 48(a).[2] In *United States v. Ball* (Middle District of Florida Case No. 5:24-CR-97) and *United States v. Brown* (Middle District of Florida Case No. 8:21-CR-348), the Government filed a motion to dismiss. In this case, the Government has not filed any such motion and has no intention of doing so.

While the Government may dismiss a criminal case "with leave of court," Fed. R. Crim. P. 48(a), the power to decide when to investigate and prosecute is a fundamental authority housed in the Executive Branch. *See United States v. Goodson*, 204 F.3d 508, 512 (4th Cir. 2000) ("[T]he discretion granted by Rule 48(a) implicates the constitutional doctrine of separation of powers."). This power "lies at the core of the Executive's duty to see to the faithful execution of the laws." *Cmty. For Creative Non-Violence v. Pierce*, 786 F.2d 1199, 1201 (D.C. Cir. 1986). The Supreme Court has held that "the capacity of prosecutorial discretion to provide *individualized* justice is firmly entrenched in American law." *McClesky v. Kemp*, 481 U.S. 279, 311-12 (1987) (emphasis added). Defendant does not cite to any authority supporting the idea that the Court can expand Rule 48(a) to compel the Executive to dismiss more charges than it desires to.

---

[2] Defendant cites *United States v. Costianes* (District of Maryland Case No. 1:21-CR-180), which was pending appeal in the Fourth Circuit at the time of the presidential pardon. Since Defendant filed his Motion, the Fourth Circuit remanded the case to the District Court for the purpose of considering the parties' pending motions and whether the pardon applied to defendant Costianes' firearm-possession charge. On remand, the United States filed a consent motion to dismiss the indictment, and the District Court has ordered the parties to file briefing concerning the impact of the pardon. (Docs. 170 and 171).

The Government has moved to dismiss charges or vacate convictions of defendants charged with crimes such as in-home firearm possession that became evident and, apparently, only would have become evident, due to January 6 investigations.[3] But it has not done so in other cases. In *United States v. Kelley* (Eastern District of Tennessee Case No. 3:22-CR-118), the defendant moved to vacate the convictions and dismiss the indictment in a case involving a conspiracy to murder employees of the United States, those employees being the FBI Special Agents involved in investigating that defendant for crimes associated with January 6. The Government opposed the dismissal. The Court in *Kelley* held that the language of the pardon did not extend to cover those crimes. [4]

The Government also opposed dismissing charges that occurred outside of the scope of the pardon in *United States v. Taranto*, (DDC Case No. 1:23-CR-229, Doc. 101). In *Taranto*, the defendant was charged *in the same indictment* with crimes stemming from conduct at the Capitol on January 6, 2021, as well as crimes involving an arrest of Taranto away from his home, where he was in possession of firearms, large-capacity magazines, ammunition, made statements about a "detonator", and possibly driving to a federal facility in June 2023 to damage or destroy that facility. *Id*. The Government moved to dismiss Taranto's crimes occurring at the Capitol on January 6 but opposed dismissing the remaining counts. The District Court denied the defendant's motion to dismiss any of the remaining counts, which were unrelated to the events of January 6, by minute order.[5]

---

[3] Defendant errs in classifying *Costianes* as a "controlled substance case." The only charge for which Costianes was convicted, and thus the only charge currently at issue, charged him with unlawful firearm possession by a controlled-substance user. That charge was based on the discovery of a firearm pursuant to a search warrant based on the events of January 6.
[4] Kelley was convicted at trial prior to the filings discussed above and is currently pending sentencing.
[5] *Taranto* is currently in a pretrial posture as additional motions are being litigated.

8

**C. There is no due process violation in the continued prosecution of Defendant for child exploitation offenses.**

Defendant makes the claim that prosecuting him for child exploitation offenses unrelated to January 6 would violate his due process rights under the Fifth Amendment. In support of that claim, Defendant lists a number of due process rights, none of which are applicable in this case. In fact, the case Defendant cites to support his proposition, *Bouie v. City of Columbia*, 378 U.S. 347, 353 (1964), does not once mention pardons; instead, it deals with the fairness of a trespass and right of entry law and its application to individuals who are not given fair warning.

Defendant claims that being treated differently from other defendants involved in the events at the Capitol on January 6, 2021, would violate his due process rights. Even if that were true, Defendant was not treated any differently than the other January 6 defendants regarding those offenses that the pardon covers. His charges were dismissed. Additionally, around the country, cases with defendants facing charges that may have risen out of the January 6 investigation are being reviewed individually. While the Government has moved to dismiss cases where such relief is warranted, it has opposed dismissal in cases in which it is not. Defendant here is distinguishable from the defendants in the other cases on which he relies. He faces additional charges of sexual exploitation of a minor and possession of child pornography which implicated two separate investigations by MHPD and FCSO involving hands-on sex offenses that predated the issuance of the January 6 complaint. And as noted above, it is in the discretion of the Government to determine who to prosecute.

**D. The evidence related to the child exploitation offenses was seized pursuant to a lawful warrant and should not be suppressed.**

Defendant argues that if the Court does not dismiss the case, it should suppress the evidence obtained during the investigation from the WDNC Search Warrant related to January 6. But the

9

evidence obtained from the WDNC Search Warrant related to January 6 should not be suppressed because it was lawfully seized.

Agents followed the proper procedures established in Fed. R. Crim. P. 41 in obtaining the warrant, which was sworn out and ordered by a United States magistrate judge within the WDNC. In examining the seized electronic devices for evidence of the January 6 offenses, they came across images and media of a completely different set of crimes with evident external effects and victims, specifically production and possession of child pornography. The Fourth Circuit has held that agents can seize such child pornography under the plain-view exception to the warrant requirement. *See United States v. Williams*, 529 F.3d 511, 521-24 (4th Cir. 2010).[6] The plain-view exception clearly applies here. But the Court need not even decide that, because the agents obtained a subsequent search warrant from the court to search and seize evidence from the devices related to child exploitation offenses eliminating any need to rely on the plain-view exception. Simply put, there was no Fourth Amendment violation in this case.

Alternatively, suppression is not warranted because the officers relied on the warrant in good faith. Evidence seized in violation of the Fourth Amendment will generally be suppressed under the exclusionary rule "to deter future unlawful police conduct." *United States v. Andrews*, 577 F.3d 231, 235 (4th Cir. 2009) (internal quotation and citation omitted). But if the officers relied in objective good faith on a search warrant, this rule does not apply even if it lacks probable cause. *United States v. Leon*, 468 U.S. 897, 920 (1984). This exception applies unless "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id*. at 922 n. 23.

---

[6] Other circuits have held that only evidence related to the crimes specified in a warrant can be seized. *United States v. Carey*, 172 F.3d 1268 (10th Cir. 1999).

In this case, law enforcement acted properly and in good faith and received a valid warrant from an independent judicial officer. That evidence is admissible, regardless of the pardon. This is different from the typical application of the good faith exception where a defendant challenges the sufficiency of the warrant. In that situation, there could be an argument an independent agent acting in good faith knew the warrant was insufficient. That cannot be the case here. In this case, Defendant makes no challenge to the probable cause established in the warrant, simply that a pardon covers the conduct that is specified in the search warrant and is therefore a Fourth Amendment violation. But he cites no meaningful authority for that proposition and certainly nothing that would call into question the objective good faith of the warrant's execution.

## IV. CONCLUSION

The Government respectfully requests that the Court deny Defendant's Motion to Dismiss, or in the Alternative Suppress, because the pardon does not extend to cover the conduct of Defendant related to the child exploitation offenses or the investigation into those crimes.

RESPECTFULLY SUBMITTED this 16th day of April 2025.

RUSS FERGUSON
UNITED STATES ATTORNEY

/s/ *Nick J. Miller*
NICK J. MILLER
NC Bar No. 46268
Assistant U.S. Attorney
United States Attorney's Office
227 West Trade St, Suite 1650
Charlotte, NC 28202
Phone: (704) 338-3157
Email: nick.miller@usdoj.gov

## ARTIFICIAL INTELLIGENCE CERTIFICATION

Pursuant to the Court's June 18, 2024, Standing Order, which was published to the Bar of the Western District of North Carolina on June 27, 2024, the undersigned hereby certifies:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard online legal research sources Westlaw, Lexis, Fast Case, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 16th day of April 2025.

/s/ Nick J. Miller
Assistant United States Attorney