IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

CASE NO. 3:24-cr-209-FDW

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>v.<br><br>DAVID PAUL DANIEL,<br><br>           Defendant. | **DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITITION TO DEFENDANT'S MOTION TO DISMISS OR SUPPRESS** |

David Daniel replies in support of his Motion to Dismiss or Suppress (Doc. No. 25). The government offers three general responses to the Motion, none of which defeat dismissal of the Superseding Indictment or suppression of the evidence seized during execution of the January 6 warrant.

First, the government argues that the January 6 pardon does not compel dismissal of the instant case. This is not correct. This case exists entirely because of evidence seized in the execution of a January 6 warrant. The warrant should never have been issued because the January 6 case was invalid.

Second, the government asserts that it can exercise prosecutorial discretion in a completely arbitrary, unprincipled, and inconsistent manner, stating simply: "it is in the discretion of the Government to determine who to prosecute." Resp., at p. 9. This is incorrect, as discussed below. It is improper for Mr. Daniel's case to continue while analogous cases are routinely being dismissed.

The government further argues that in exercising prosecutorial discretion, it has not treated Mr. Daniel differently from other defendants, that "[w]hile the government has moved to dismiss cases where such relief is warranted, it has opposed dismissal in cases in which it is not," and that "Defendant here is distinguishable from the defendants in the other cases on which he relies." Resp., at p. 9. But the government offers no support for these conclusory assertions. The government has not adequately distinguished Mr. Daniel's case from the cases where the government dismissed a January 6 defendant's separate charges or analogized it to those two cases that have not been dismissed. The two cases that the government relies upon in which unrelated cases were not dismissed after the January 6 pardons are distinguishable. *See* Resp., at p. 8 (discussing *United States v. Kelly*, 3:22-CR-118 (E.D. Tenn.) and *United States v. Taranto*, 1:23-CR-229 (D.D.C.)). And the government has not demonstrated how the cases that Mr. Daniel relies upon are not applicable here – even though, unlike the government's authority, *Costianes* is a Fourth Circuit case. *See, e.g., United States v. Costianes*, 1:21-CR-458 (D. Md.) and 24-4543 (4th Cir.). Finally, in insisting that the Court cannot force it to dismiss a case under Rule 48(a), the government overlooks the fact that Mr. Daniel is asking the Court to dismiss the case, not the government.

Third, the government argues that suppression is improper because of the "plain-view" exception and because agents acted in good faith. Those arguments should not prevail on the facts here.

# ARGUMENT

## I. The Pardon Covers Offenses that Would Not Have Been Prosecuted but for the January 6 Investigations.

The government accuses Mr. Daniel of trying to extend the scope of the pardon to a level not supported by any definition or case law. Mr. Daniel's interpretation of the pardon is based on a straightforward reading of the pardon's language and the Justice Department's interpretation of the pardon in similar cases, not the creativity of his counsel.

The context underlying President Trump's pardon clarifies its scope. The pardon was intended to end a "grave national injustice that [was] perpetrated upon the American people" and begin a "process of national reconciliation." 90 Fed. Reg. at 8331. Based on this language, the government recently concluded in *United States v. Costianes* that *the pardon's "remedial purpose will not be achieved if people subjected to January 6-related investigations continue to be prosecuted for… offenses that would not have been discovered but for those investigations."* 1:21-cr-00458-JKB (D.Md.) (Bredar, J.), Doc. No.175 (**Exhibit A**) (emphasis supplied).

In *Costianes*, the government concluded that the defendant's charges should be dismissed because his "possession of firearms and ammunition in his basement, while being an unlawful user of controlled substances," would not have been discovered without the execution of "the 'Capitol Riot Warrants' on his home.'" *Id*. Likewise, Mr. Daniel argues that this case should be dismissed because the evidence allegedly supporting the instant charges would not have come to light absent the January 6 related search of his person and residence. This is the same rationale that

3

the government offered in *Costianes* to support the dismissal of the defendant's separate charges. Rather than extending the scope of the pardon to a level not supported by any definition or case law, Mr. Daniel's interpretation of the pardon is based on the government's interpretation in analogous cases.

Unable to otherwise avoid admitting that the government has acted inconsistently on analogous facts in *Costianes*, the government claims that it had probable cause to search Mr. Daniel's electronic devices based on the pre-existing evidence from the Mint Hill Police Department ("MHPD") and Forsyth County Sheriff's Office ("FCSO") investigations. There are at least three fatal deficiencies with these arguments.

First, the search warrant affidavit used to secure the November 28, 2023 warrant to search Mr. Daniel's home does not mention any investigation regarding alleged child-exploitation offenses by the MHPD and FCSO investigations at all. *See* MTD Exhibit C (Doc. No. 26-1).

Second, if MHPD and FCSO had probable cause to search Mr. Daniel's electronic devices, those departments would have executed that search years ago, they did not. The original indictment in this case was based solely on the events that occurred in Mint Hill, and had no connection to Forsyth County. The last act in the Mint Hill investigation occurred during 2021 – over three years before the indictment was returned. It cannot be accurate to suggest that this case is a continuation of an abandoned MHPD investigation from 2021. In similar fashion, the government's brief does not provide enough detail about the FCSO investigation for the Court to know

4

whether or how it was an active investigation, or conveniently revived to defend the warrants.

Third, the government's Response did not identify the specific evidence it claims was obtained by MHPD or FCSO that would supply the probable cause needed to search through Mr. Daniel's electronic devices.

Mr. Daniel's position that the pardon covers evidence discovered during January 6 related searches is based on the government's own interpretation of the pardon in analogous cases, not an unfounded extension of case law.

## II. Prosecutorial Discretion Does Not Authorize the Justice Department to Arbitrarily Decide Who to Prosecute.

The government asserts that it has unbridled prosecutorial discretion and can refuse to dismiss the case for any reason. To be clear, Mr. Daniel is asking this Court, not the government, to dismiss the case. And if the resolution of the issues presented in Mr. Daniel's Motion were merely a matter of prosecutorial discretion, federal courts would not be directing the government to file briefing concerning the inconsistent positions it has taken with respect to the pardon's scope. *See e.g., United States v. Costianes*, 1:21-cr-458-JKB (Bredar, J.) Doc. No. 171, at 10.

Of course, the existence of prosecutorial discretion does not empower prosecutors to arbitrarily decide who to prosecute. *See United States v. Steele*, 461 F.2d 1148, 1151 (9th Cir. 1972) (citations omitted) ("[t]he Due Process Clause of the Fifth Amendment furnishes a federal defendant with the same guarantee against discriminatory federal prosecution. A defendant cannot be convicted if he proves unconstitutional discrimination in the administration of a penal statute."); *see also*

5

*Oyler v. Boles,* 368 U.S. 448, 456 (1962) (confirming that while "the conscious exercise of some selectivity in enforcement is not itself a federal constitutional violation," a violation may arise if it is shown that "the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.").

The government argues that although it thinks it has unrestricted prosecutorial discretion and can arbitrarily dismiss or refuse to dismiss cases affected by the January 6 pardons (as noted, it does not), its conduct here is not arbitrary. To try to show that its decision not to dismiss Mr. Daniel's case is not arbitrary, but consistent with DOJ's approach in similar cases, the government cites only two cases where it declined to dismiss charges that were discovered during January 6 investigations. However, the evidence against the defendants in those cases was discovered independent of the January 6 investigations against them.

The defendant in *United States v. Kelley* was indicted in May 2022 in DC on charges related to January 6. 3:22-cr-118-TAV (E.D. Tenn) (Varlan, J) (Doc. No. 3) (Docket Sheet attached as **Exhibit B**). During discovery in the January 6 case, the government accidentally provided the defendant with documents that included the names of the law enforcement officers who were involved in his January 6 criminal investigation. *Kelley,* Doc. No. 94.

On December 13, 2022, an acquaintance of the defendant provided the police with a document he had received from the defendant that contained the names of the law enforcement officers who were involved in the defendant's January 6

6

Case 3:24-cr-00209-FDW-DCK    Document 35    Filed 04/28/25    Page 6 of 15

investigation. *Id*. The acquaintance told the authorities that, according to the defendant, the document was a "hit list." *Id*.

On January 27, 2025, the defendant moved to dismiss the murder plot charges based on President Trump's pardon, arguing that the murder plot charges were related to his January 6 charges. *Kelley*, Doc. No. 94. Specifically, the defendant argued that, but for the government's failure to redact the names of the officials during discovery in the January 6 case, the defendant would not have been able to draft his assassination list. *Id*. The government opposed the defendant's motion to dismiss on the grounds that the murder plot was unrelated to the January 6 charges. *See* Doc. No. 95.

The facts in *Kelley* are, therefore, distinguishable. In *Kelley*, the defendant argued that the pardon covered the murder plot charges because he would not have been able to draft his "hit list" but for the government's discovery error in the January 6 case. The government's decision not to dismiss the defendant's charges in *Kelley* had nothing to do with whether the pardon covers evidence obtained pursuant to a January 6 related search.

The defendant in *United States v. Taranto* was indicted in February 2024 on five counts related to the events on January 6 and six counts related to his unlawful possession of a firearm, ammunition, and ammunition feeding device in 2023. 1:23-cr-229-CJN (D.D.C) (Nichols, J.) (Docket Sheet attached as **Exhibit C**). *Taranto,* Doc. No. 45. On January 25, 2025, the government moved to dismiss the five January 6 charges. *Taranto,* Doc. No. 96. In his response, the defendant argued that the

unlawful possession counts should be dismissed because they were related to the January 6 counts because they were brought in the same indictment. *Taranto*, Doc. No. 99.

The government based its decision not to dismiss the unlawful possession charges against the defendant in *Taranto* on the fact that relatedness for purposes of joinder and judicial economy does not constitute relatedness for purposes of President Trump's pardon, and the other charges were discovered independently of the January 6 investigation.

The government's decision not to dismiss the charges in *Kelley* and *Taranto* had nothing to do with whether the pardon covers evidence discovered during execution of a January 6 search warrant. The government's interpretation of *Kelley* and *Taranto* in *Costianes* confirms this. *See* Ex. A at 8-9 (distinguishing *Kelley* on the grounds that the defendant's separate offenses were "discovered through means unrelated to any investigation into his actions on January 6. Distinguishing *Taranto* because the defendant broadcasted "some of his June 2023 offenses live over a public YouTube channel and that law enforcement discovered his other offenses when he was apprehended after a confrontation with U.S. Secret Service agents.").

The government's reference to *Kelly* and *Taranto* does not establish a consistent interpretation of the pardon's scope, but the opposite. That the government has prosecutorial discretion does not mean it can arbitrability narrow the pardon's scope as applied to Mr. Daniel based on the nature of the crimes he allegedly committed. Setting that aside, this Court should endeavor to interpret the scope and

8

effect of the pardon in a manner that is consistent with what other federal courts are doing. Particularly, courts within this Circuit.

**III. The Justice Department's Inconsistent Interpretation of the President's Pardon Implicates Mr. Daniel's Due Process Rights.**

The government expressed skepticism towards Mr. Daniel's argument that the government's unequal application of the pardon would violate his due process rights. That a defendant's due process rights might be implicated by the government's unequal or discriminatory application of the law is beyond question. *See Steele*, 461 F.2d at 1151.

Likely because of this, the government further argues that Mr. Daniel has not been treated differently because in Mr. Daniel's case, the MHPD and FCSO investigations predated the issuance of the January 6 warrant. That two dormant or discontinued investigations predated the issuance of the January 6 complaint does not address Mr. Daniel's argument that, but for the January 6 search warrant, the government would not have had probable cause to search his electronic devices. As noted, the affidavit for the November 28, 2023 warrant does not ever mention the MHPD or FCSO investigations (likely because those investigations had long before ended). The government failed to explain how Mr. Daniel's due process rights will be protected if the government gives the pardon a narrower scope as applied to Mr. Daniel based on the nature of the crimes for which he is accused.

## IV. If the Court Declines to Dismiss This Case, the Evidence Against Mr. Daniel Should be Suppressed.

None of the January 6 cases cited by the government dealt with motions to suppress. Thus, whether the pardon warrants suppression of evidence obtained pursuant to a January 6 related search presents a novel issue for the Court.

The government argues that the evidence allegedly discovered during the search of Mr. Daniel's electronic devices need not be suppressed because of the plain view and good faith reliance exceptions.

The plain view exception does not address Mr. Daniel's argument that evidence discovered during a January 6 related search is covered by the pardon. The first requirement of the plain view exception requires that the executing officer lawfully be in the place from which the object could be viewed. *United States v. Green*, 106 F.4th 368, 377 (4th Cir. 2024). Mr. Daniel's argument is that because the January 6 investigations were a "grave national injustice," none of the officers were lawfully present when they conducted the January 6 related search of Mr. Daniel's person and residence. The plain view exception is not applicable here.

Even if it were, the government would have to explain why it chose to dismiss offenses that were discovered in plain view during January 6 related searches in analogous cases.

The government's good faith argument suffers from the same logical defect. Mr. Daniel's argument that evidence discovered pursuant to a January 6 search warrant is covered by the pardon is not rebutted by the executing officers' good faith reliance on the January 6 search warrant.

10

Mr. Daniel does not argue that the January 6 related search warrant was defective in the traditional sense. He argues that because of President Trump's pardon, any alleged offense that would not have come to light but for the events on January 6, 2021, is covered by the pardon – the same argument made by the parties in *Costianes*. *See* Ex. A. Mr. Daniel's argument turns on the proper interpretation of President Trump's pardon, not whether his Fourth Amendment rights will be violated unless the evidence is suppressed. The government's good faith exception argument is therefore misplaced.

But even if the good faith exception did apply here, which it does not, the good faith exception only applies when an officer acting in good faith could have reasonably assumed the deficient search warrant was valid. *See United States v. Hersman*, 583 F. App'x 156, 157 (4th Cir. 2014). President Trump's characterization of the January 6 investigations as a "grave national injustice that [was] perpetrated upon the American people" forecloses any good faith reliance by officers executing January 6 related search warrants.

And again, if the good faith exception applies in this case, the government would need to explain why the government decided to dismiss the charges against other January 6 defendants that were discovered by officers relying in good faith on January 6 search warrants.

Applying the plain view and good faith exceptions here would be antithetical to the pardon's remedial purpose of putting an end to the "grave national injustice that [was] perpetrated upon the American people…." 90 Fed. Reg. at 8331. Moreover,

11

neither exception addresses Mr. Daniel's argument that, but for the January 6 investigation against him, his electronic devices would not have been searched.

## CONCLUSION

The Justice Department has determined that the remedial purpose of President Trump's pardon cannot be achieved if individuals continue to be prosecuted for offenses that would not have been discovered but for the events on January 6, 2021. *See* Ex. A. That the government has prosecutorial discretion does not give it cart blanche to arbitrarily decide the scope of the pardon based on the nature of the offenses the pardon stands to erase. The government's Response did not cite a single case where the government decided not to dismiss charges brought against a January 6 defendant that were discovered during a January 6 related search. The preservation of Mr. Daniel's due process and equal protection rights requires that the case be dismissed. However, if the Court declines to dismiss the case, all evidence obtained by and derivative of the government's January 6 related search of Mr. Daniel's residence should be suppressed.

Mr. Daniel requests oral argument and an evidentiary hearing.

Respectfully submitted this 28th day of April 2025.

/s/ William R. Terpening
William R. Terpening
N.C. Bar No. 36418
Connor D. Reid
N.C. Bar No. 62617

**TERPENING LAW PLLC**
221 W. 11th Street
Charlotte, NC 28202
terpening@terpeninglaw.com

(980) 265-1700

*Counsel for Defendant David Daniel*

## CERTIFICATE OF COMPLIANCE WITH STANDING ORDER IN RE: USE OF ARTIFICAL INTELLIGENCE

No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in Westlaw. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Dated: April 28, 2025.

/s/ William R. Terpening
William R. Terpening

## CERTIFICATE OF SERVICE

I certify that I have filed this **REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR SUPPRESS** through the Court's CM/ECF system, which constitutes service on all parties.

Dated: April 28, 2025.

/s/ William R. Terpening
William R. Terpening