# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
## Case No. 3:24-cr-00209

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>DAVID PAUL DANIEL,<br><br>Defendant. | **OBJECTIONS TO MEMORANDUM & RECOMMENDATION (EVIDENTIARY HEARING AND ORAL ARGUMENT REQUESTED)** |

Defendant, David Daniel, files these objections to the Memorandum and Recommendation ("M&R") entered on October 2, 2025 (Doc. 40), denying his Motion to Dismiss, or in the Alternative, to Suppress (Doc. 25). The procedural and factual background for the Motion are set forth in Defendant's briefing for the Motion and incorporated in these Objections. (Doc. 25, pp. 2-4).

Mr. Daniel's principal grounds for objecting to the M&R are:

- It relies heavily on only two opinions, which are not binding and merely persuasive authority, for its conclusion that President Trump's pardon of Mr. Daniel for his crimes related to the events of January 6 does not require dismissal of the instant charges. One is a district court opinion from another district within our Circuit. *United States v. Costianes*, 782 F. Supp. 3d 253, 263 (D. Md. May 9, 2025). This district court opinion in *Costianes* has not been, and

1

will not be, reviewed by the Fourth Circuit. The other is a ruling from another circuit on a motion for release pending appeal. *United States v. Wilson*, No. 25-3041, 2025 WL 999985 (D.C. Cir. Apr. 2, 2025). That order is not a final decision or an opinion on the issue, which is still being appealed and has not yet even been fully briefed.

- The M&R does not make any finding about Mr. Daniel's factual assertion that this case would not have arisen but for the investigation in his January 6 case. (Doc. 25, p.1). A hearing and express decision on this assertion are necessary, at minimum, for appellate review and so that the Court can provide an articulated analysis of whether the government is justified in taking an inconsistent opinion that the Pardon does apply to the separate charges in other analogous cases.

- The M&R does not address the fact that, in almost every other similar case, the government has strenuously argued that the January 6 pardon *does* cover charges of other crimes arising from January 6 investigations. As such, *it provides no rationale* for rejecting Mr. Daniel's argument that continuing to prosecute Mr. Daniel for the instant charges while charges against other similarly- situated defendants are dismissed violates his due process rights, and that the government's inconsistency here is arbitrary and without sufficient basis. Although it may be that the government can selectively prosecute Mr. Daniel while dismissing charges against others, it must have at

2

least a rational and constitutionally permissible basis for doing so. But the government has not articulated any basis, let alone a sufficient one.

Mr. Daniel's requests for dismissal and suppression rely on the same factual and legal basis, and are treated as such in the M&R. Therefore, these objections are raised with respect to both the dismissal and suppression components of the Motion.

## I. *Costianes* and *Wilson* Do Not Offer Adequate Support for the M&R's Recommendations.

The keystone of the M&R is the "plain meaning" reasoning and holding of *United States v. Costianes*, which the M&R essentially adopts. M&R, *passim* (discussing 782 F. Supp. 3d 253, 263 (D. Md. May 9, 2025) and the line of other opinions in the *Costianes* case). Mr. Daniels drew the *Costianes* matter to the Court's attention in his opening Motion, as an example of a similar case that the Fourth Circuit was then (in March 2025 when the Motion was filed) in the midst of addressing. (Doc. 25, pp. 5, 7-9). During the time since the Motion was fully briefed and the entry of the M&R, the Fourth Circuit remanded the matter to the district court to "determine… whether or not the pardon applies to Costianes' conviction [on a separate matter, a firearms charge under 18 U.S.C. § 922(g)]." 782 F. Supp. 3d at 257.

The M&R's almost exclusive reliance on *Costianes* is further problematic in that the Fourth Circuit will never review the district court's decision because the appeal was dismissed on July 25, 2025. *See* Order of Dismissal, attached as **Exhibit**

3

**A**. Therefore, the opinion upon which the M&R principally depends is only unreviewed, persuasive authority from a sister district court.[1]

The only other opinion – and the *only appellate case* – that the M&R relies on for its determination that the Pardon does not extend to the instant case is *United States v. Wilson*, No. 25-3041, 2025 WL 999985 (D.C. Cir. Apr. 2, 2025). However, *Wilson* is not even a final opinion from the D.C. Circuit. 2025 WL 999985, at *1. Rather, it is an order addressing the emergency motion for release pending appeal of a defendant whose separate offense was "uncovered during investigation of the unrelated January 6 offenses." *Id.* at *2. At the appellate level, Wilson is not even fully briefed yet. *Wilson* Appellate Docket Sheet, attached as **Exhibit B**. And even at this preliminary stage, one judge on the panel offered a dissent questioning the majority's basis for denying Mr. Wilson's release, which was that he had not established a likelihood of success on the merits. *Wilson*, at *2 (Rao, J., dissenting). Judge Rao wrote that Mr. Wilson "raises a novel question implicating the scope of the pardon power, which is vested exclusively in the President," and "novel questions about the extent of the Executive's power to administer and apply a blanket pardon to particular individuals." *Id.* (citations omitted). At minimum, the order is not the ultimate decision on the issue from the D.C. Circuit, or binding precedent (even in its own Circuit).

---

[1] Mr. Daniel acknowledges that his briefing identifies the anticipated result of this case as likely instructive. (Doc. 25, p. 5). However, this is because – based on the procedural posture of *Costianes* at the time the Motion was briefed – he anticipated that the issue would be determined, as binding authority, by the Fourth Circuit.

4

Finally, contrary to the reasoning of the M&R, *Costianes*, and *Wilson*, a plain meaning, text- based reading of the Pardon's use of the phrase "related to" does *not* preclude dismissal of the instant charges as unrelated – to the contrary, it supports dismissal. The government, in every other analogous case (of note, including in the pending appeal of *Wilson* and throughout the *Costianes* briefing), makes this argument very well. *See Wilson*, No. 25-3041, Brief for United States (Oct. 20, 2025) (attached as **Exhibit C**), at pp. 13-20. The M&R does not discuss this alternative plain meaning interpretation (and, as discussed below, does not attempt to reconcile the due process implications arising from the government's inconsistent positions in the analogous *Wilson* and *Costianes* cases as opposed to here).

As the government has argued in *Wilson*, *Costianes*, and apparently in every other case,[2] the pardon grants "a full, complete and unconditional pardon to… individuals convicted of offenses *related to* events that occurred at or near the United States Capitol on January 6, 2021." Proclamation No. 10887, 90 Fed. Reg. 8331 (Jan. 29, 2025)(emphasis supplied). As the government reasons in its *Wilson* briefing, the Court should interpret "related to" broadly, and in proper context. Exhibit C, p. 14

---

[2] If there are legitimate exceptions where the government has not made this argument *in favor of* extension of the Pardon to separate crimes arising from January 6 investigations in analogous cases, the government has not identified them and Defendant has not been able to find them. The government offers only two cases where it contends it declined to argue that the Pardon should extend to separate crimes, but these cases are not analogous and sharply distinguishable because they arose from sources other than a January 6 investigation. (Doc. 35, pp. 6-9 (distinguishing *United States v. Kelley*, 3:22-cr-118 (E.D. Tenn.) and *United States v. Taranto*, 1:23-cr-229 (D.D.C.)). To put a fine point on it: It seems that the government has supported dismissal in every case that would not have been brought but for January 6 evidence.

5

(quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990) (The words "related to" in their "normal sense" have a "broad common-sense meaning" potentially reaching anything having "a connection with" the related events.); *Dubin v. United States*, 599 U.S. 110, 119 (2023) ("That the phrase relate to refers to a relationship or nexus of some kind is clear. Yet the kind of relationship required, its nature and strength, will be informed by context.") (cleaned up)).

As Mr. Daniel's reply brief asserts, and as the government has pointed out elsewhere, the context underlying President Trump's Pardon shows the Pardon's broad scope. The Pardon was intended to end a "grave national injustice that [was] perpetrated upon the American people" and begin a "process of national reconciliation." 90 Fed. Reg. at 8331. Based on this, in briefing for the *Costianes* case, the government has stated: "As reflected in the Department's actions concerning Mr. Costianes, the proclamation's remedial purpose will not be achieved if people subjected to January 6 related investigations continue to be prosecuted for certain in home offenses that would not have been discovered but for those investigations." (Doc. 35-1, p. 6). This is the same situation Mr. Daniel finds himself in.

## II. The M&R Does Not Make Findings Regarding Whether the Instant Case Arose Because of the January 6 Investigation.

Mr. Daniel explains, in his briefing for the Motion, the basis for his assertion that this prosecution would not have occurred but for evidence obtained from the January 6 investigation. (Doc. 35, pp. 3-5). The M&R acknowledges this position. (Doc. 40, p. 3). Simply put, the warrant this Court issued on November 28, 2023 ("J6 Search Warrant") – the warrant that originated the federal prosecution of Mr. Daniel

6

for the instant charges – was specifically directed and limited to a search of Mr. Daniel's residence "for devices that may contain evidence of his conduct at the *Capitol on January 6, 2021*." (Doc. 40, p. 3 (emphasis supplied)). The affidavit supporting the J6 Search Warrant refers only to events and evidence related to the January 6 case – there is no reference to a federal child exploitation investigation. (Doc. 26-1). The federal government only learned of a much earlier state level child exploitation investigation "[d]uring operational coordination leading up to the arrest and search of DANIEL and his residence," for the J6 Search Warrant. (Doc. 26-2, p. 4). As such, there never would have been a federal prosecution of Mr. Daniel for child exploitation charges unless the pardoned January 6 investigation had prompted government to obtain the J6 Search Warrant and search Mr. Daniel's home. During the execution of the J6 Search Warrant at Mr. Daniel's house, agents seized two electronic devices. (Doc. 40, p. 3). Agents searched those devices pursuant to a warrant obtained from this Court on July 24, 2024 and identified images they rely on for the instant case. (Doc. 40, p. 3); (Doc. 26-2). As such, the instant federal case was solely caused by the January 6 investigation, and the government would not have obtained the devices with the images that allegedly support this case without the January 6 investigation.[3]

---

[3] It is true that there remained the possibility of state- level prosecutions in Mecklenburg and Forsyth Counties, but those are different matters that would not have been a federal prosecution. By the government's own admission, it learned of the Mint Hill child exploitation investigation only in the process of obtaining a warrant exclusively in furtherance of the January 6 investigation. (Doc. 26-2, p. 4). This strongly suggests that this federal case would not have been brought unless there had been a January 6 case, and the government has not offered any evidence otherwise.

7

The government appears to contend otherwise, but only in conclusory fashion. It argues that the alleged evidence of the child exploitation offenses is unrelated to the J6 Search Warrant because "there was sufficient probable cause to search… the contents of Defendant's electronic devices… based on the pre-existing evidence from the MHPD and FCSO investigations." (Doc. 32, p. 6). Regardless of whether this is true, it was the earlier J6 Search Warrant for the search of Mr. Daniel's person and residence that gave rise to this case. The government was not aware of the abandoned state investigation until it began to pursue the January 6 Search Warrant. That initial warrant was directed to, and obtained only because of, the January 6 investigation. Tellingly, that warrant application does not mention anything about the Mint Hill or Forsyth County investigations. (Doc. 26-1). The original affidavit relies exclusively on evidence of the January 6 case. (Doc. 26-1).

The government's briefing does not explain why or how this federal case would have been brought unless there had been a January 6 prosecution. Thus, the Court cannot make a determination about whether any state investigation evidence was used in some fashion for the J6 Search Warrant (although not referenced in that warrant). Surely, if the J6 Search Warrant was based on evidence from the Mint Hill and Forsyth state investigations was part of the reason for the J6 Search Warrant, the warrant affidavit would have said so, and mentioned evidence from the state investigations. But that is not the case.

Notwithstanding the importance of whether this case would not have been brought but for the pardoned January 6 case, the magistrate judge did not conduct a

8

hearing on the issue, or even provide a conclusion in the M&R regarding whether it agreed or disagreed with this assertion. At minimum, the Court should conduct a hearing to resolve this issue.

### III. The M&R Does Not Substantively Explain its Conclusion that the Government Does Not Violate Due Process by Prosecuting Mr. Daniel While Dismissing Indictments Against Similarly- Situated Defendants.

The M&R does not provide substantive reasoning for its conclusion that there is no due process violation – nor could it, because the government has never stated any basis for its decision to continue to prosecute one pardoned January 6 defendant, while dismissing the cases against most others.

The government may have substantial discretion in determining who it will continue to prosecute, but it must articulate a valid, permissible basis in the face of a due process challenge: "A prosecution… cannot be motivated by a suspect's exercise of constitutional rights through participation in political activity." *United States v. Hastings*, 126 F.3d 310, 313 (4th Cir. 1997) (citing *United States v. Marcum*, 16 F.3d 599, 602 (4th Cir.1994); *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir.1974)). Mr. Daniel must show that similarly- situated others have not generally been proceeded against, and that the government's selection of him for prosecution is based

9

upon an impermissible consideration like exercise of constitutional rights. *Berrios,* 501 F.2d at 1211.[4]

It is beyond reasonable dispute that the events of January 6, the ensuing prosecutions, and the Pardon, are highly politicized, have been politically- motivated, and are intertwined with First Amendment concepts like freedom of speech and assembly. The government has generally argued (elsewhere) that the Pardon covers cases like this one. But there is one significant difference between this case and the vast majority of cases in which the government supports dismissal: This case involves the politically unsavory charge of child exploitation, as opposed to allegations of less distasteful misconduct, like prosecutions for felon in possession of a firearm or illegal drug distribution, which have been elsewhere dismissed. Politically, the optics of the Pardon encompassing less odious allegations are less problematic. But politically, and quite reasonably, the Pardon cannot be regarded as encompassing child exploitation.

The best evidence of this political motivation is the simple fact that the Department of Justice administration generally supports dismissal of cases that, but for the child exploitation allegation, would be completely analogous. That there is no instruction from the Fourth Circuit or, it appears, any other appellate court on the issue of whether the Pardon covers crimes uncovered during January 6 investigations is explained by the fact that the government always, in analogous cases, takes the

---

[4] Mr. Daniel does not contend that any individual prosecutor in this matter has taken any improper action. To the contrary, he is informed and believes that the decision regarding whether to dismiss this case because of the Pardon – and the inconsistency between the decision here and in other cases – is institutional, occurring at an elevated level within the Department of Justice.

10

position that the pardon covers the separate crimes. This occurred in *Costianes*, *Wilson*, and cases discussed in the Motion to Dismiss brief. *See, e.g.,* Ex. C; (Doc. 25, p. 9 (citing *United States v. Ball*, 1:23-cr-160 and 5:24-cr-97 (M.D. Fla.) and *United States v. Brown*, 8:21-cr-348 (M.D. Fla.)); (Doc. 35-1). Those cases are generally dismissed with the government's consent (indeed, often at the government's emphatic request), so there is no reason any party would appeal.

Indeed, it is so common for the government to support dismissal of separate cases arising from January 6 investigations that the parties appear to only have been able to identify two exceptions, other than Mr. Daniel's case: *United States v. Kelley*, No. 3:22-cr-00118-TAV-JEM (E.D. Tenn. Dec. 16, 2022) and *United States v. Taranto*, No. 1:23-cr-00229-CJN (D.D.C. Jan. 25, 2025). Mr. Daniel addresses these in his reply brief, but they are distinguishable because the evidence supporting those cases was discovered independently of the January 6 investigation. (Doc. 35, pp. 6-8). *See also supra*, n. 2. Here, the federal government discovered the issue in the process of obtaining a January 6 warrant, and got the direct evidence upon which it relies from the search or Mr. Daniel's residence and person executed pursuant to that warrant.

Thus, based on available comparative cases, the government dismisses cases in which the evidence arises from a pardoned January 6 offense all the time. Considering this, the government's treatment of Mr. Daniel is arbitrary or improper because the government has not, and cannot, offer any explanation for why it would not dismiss this case when (even where Courts disagreed on the law, as in *Costianes* and *Wilson*) it appears to always dismiss analogous cases.

11

The concern about an improper political motive for continuing this case could have been addressed if the government had supplied a reason for the disparity between this and other cases. But the government offers no explanation or rationale for its decision. The government broadly asserts that its decision regarding this case is based on some kind of substantive, individualized review and generally that "it is in the discretion of the Government to determine who to prosecute." (Doc. 32, p. 9). But that is not a substantive rationale. The government offers no reason for declining to dismiss the charges against Mr. Daniel.[5] The lack of any explanation supports dismissal based on a due process violation.

WHEREFORE, Mr. Daniel objects to the M&R. He requests an evidentiary hearing and oral argument on the basis that such a hearing would aid the decisional process.

Respectfully submitted, this 27th day of October 2025.

/s/ William R. Terpening
William R. Terpening
N.C. Bar No. 36418

**TERPENING LAW PLLC**
221 West Eleventh Street
Charlotte, North Carolina 28202
terpening@terpeninglaw.com
(980) 265-1700

*Counsel for Defendant David Daniel*

---

[5] Likewise, the M&R says that "the Government here suggests an application of the Pardon that appears consistent with its proper scope." (Doc. 40, p. 9). However, the M&R does not reconcile that with the fact that the government in every other case has urged courts to apply the Pardon as Mr. Daniel requests here.

12

## CERTIFICATE OF COMPLIANCE WITH STANDING ORDER IN RE: USE OF ARTIFICAL INTELLIGENCE

No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in Westlaw. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Dated: October 27, 2025.

/s/ William R. Terpening
William R. Terpening

## CERTIFICATE OF SERVICE

I certify that I have filed these **OBJECTIONS TO MEMORANDUM & RECOMMENDATION (EVIDENTIARY HEARING AND ORAL ARGUMENT REQUESTED)** through the Court's ECF system, which constitutes service on all parties.

Dated: October 27, 2025.

/s/ William R. Terpening
William R. Terpening
